## MENTZ and Another *against* HAMMAN.

APPEAL.

1. An order given by an execution creditor to the sheriff to stay all further proceedings on his execution until further directions, is a waiver of his priority in favour of a second execution received by the sheriff during the continuance of the stay.

2. On the 30th of May, 1839, a fi. fa. was delivered to the sheriff of Northampton county, at the suit of A. & Co., returnable to August term of the Court of Common Pleas. On the 15th of June, 1839, a testatum fi. fa. at the suit of B. & Co. was placed in the sheriff's hands. To the first execution the following return was made. "The within writ came to my hands on the day indorsed on the inner margin, and nothing was done in pursuance thereof by the directions of the plaintiff's attorney, as I understood from J. K. Heckman, in whose hands the writ was deposited, until the 15th of June last, when a testatum fi. fa. issued out of the District Court of the city and county of Philadelphia, at the suit of Kay and Kay, was placed in my hands, with directions to proceed forthwith; whereupon I levied both writs upon the personal property of the defendant, and exposed the same to sale, which sale yielded the sum of nine hundred and thirty three dollars and twenty-six cents, which amount, after the payment of costs is claimed by both execution creditors, and which I have paid into Court under the authority of the act of assembly." The money was paid into the Court of Common Pleas, who decreed the same to the second execution: *Held*, that the sheriff's return was sufficient and conclusive between the parties; that evidence was not admissible to gainsay it; and that the decree of the Court below was right.

THIS was an appeal by George W. Mentz & Son, from a decree of the Court of Common Pleas of Northampton County, in the matter of the distribution of certain money arising from the sale of the goods of Henry Hamman, under two writs of *fieri facias.*

The facts appeared to be as follows. On the 25th of August, 1838, judgment was entered by confession, in the Court of Common Pleas of Northampton, in favour of George W. Mentz & Son, against Henry Hamman, for the sum of thirty-six hundred and ninety-six dollars, being the penalty of a bond given by the latter to the former. On the 30th of May, 1839, a writ of *fieri facias* issued, returnable to August Term, 1839; and was delivered to the sheriff on the same day.

(Mentz *v.* Hamman.)

On the 15th of June, 1839, a writ of *testatum fieri facias* from the District Court for the City and County of Philadelphia, on a judgment obtained in that Court by Kay & Brother against Henry Hamman, was delivered to the sheriff of Northampton; who then proceeded to sell the goods of the defendant, and made return of the writs.

In the case of *Mentz & Son* v. *Hamman* the following return was made.

"To the Judges within named, I do certify and return, that the within writ came to my hand on the day endorsed on the inner margin, and that nothing was done in pursuance thereof by the directions of the plaintiff's attorney, as I understood from J. K. Heckman, in whose hands the writ was deposited, until the 15th of June last, when a *testatum fieri facias* issued out of the District Court of the City and County of Philadelphia, at the suit of Kay and Kay, was placed in my hands with directions to proceed forthwith; whereupon I levied both writs upon the personal property of the defendant, and exposed the same to sale; which sale yielded the sum of nine hundred and thirty-three dollars and twenty-six cents; which amount, after the payment of costs, is claimed by both execution creditors, and which I have paid into Court under the authority of the act of assembly."

In the case of *Kay & Brother* v. *Hamman,* the return was as follows:

"To the judges within named, I do certify &c., That this writ was placed in my hands on the day, and at the time thereon endorsed, that prior thereto, to wit, on the 30th day of May, 1839, a writ of *fieri facias* at the suit of George W. Mentz & Son, against the within named defendant, was placed in my hands with directions from the plaintiff's attorney to do nothing thereon until further orders; that on the day the within writ was placed in my hands, to wit, on the 15th of June, 1839, I levied both writs upon the personal property of the defendant, and made by the sale thereof nine hundred and thirty-three dollars and twenty-six cents, which sum after the deduction of the costs and expenses attendant upon the sale, is claimed by both execution creditors, and paid into the Court of Common Pleas of Northampton county, under the authority of the act of assembly, &c. under a rule of Court."

The money having been paid into Court, rules were obtained by the counsel of the two execution creditors to show cause why it should not be paid to them.

On the 24th of August, 1839, the Court after argument discharged the rule taken on behalf of G. W. Mentz & Son; and made absolute the rule in favour of Kay & Brother.

(Mentz v. Hamman.)

On the 31st of August, the decree was opened to give the parties an opportunity of producing fresh testimony.

On the 21st of November, 1839, the depositions of the attorneys for Mentz & Son, and of Hamman, the defendant, were produced on behalf of Mentz & Son; and the depositions of the sheriff and his clerk or deputy, were produced on behalf of Kay & Brother. The testimony related principally to the orders or instructions given by the plaintiff's attorney at the time of lodging the writ in the case of Mentz & Son in the sheriff's office; and there was considerable variance in the recollection of the witnesses.

The Court, after hearing the depositions, and after argument, refused to vary the decree, and ordered the money to be paid to Kay & Brother.

An appeal was then taken to this Court.

Mr. *M'Cartney* for the appellants.
The first execution attached from the time of its delivery to the sheriff, whether a levy was made under it or not. The return is uncertain; but even on this return the appellants were entitled to the money. In *Watson on Sheriffs,* 69, is a case of a return nearly similar to this, which was held bad. That part of the return which is relied on against the appellants, must be rejected, as it does not state who Heckman is. This is a proceeding *in rem,* and the object in paying the money into Court is, that it may be distributed according to law and equity. We could therefore give evidence to contradict the return. The fund is to be distributed as if the sheriff had not been guilty of any irregularity. *Ulrich* v. *Dryer,* (2 *Watts,* 303.) But if there has been any irregularity, it was on the part of the sheriff. Our depositions do not contradict the sheriff's return in point of fact; since the sheriff does not assert the fact positively, but states what he " understood from J. K. Heckman." It is not the practice in the country to push executions to a sale forthwith. Probably half the number are settled without a sale. The rule to be gathered from the cases is, that if there be *fraud,* the delaying creditor will be postponed. Here there is no allegation or pretence of fraud. *Heckman* v. *Caldwell,* (4 *Rawle,* 376.) *Howell* v. *Alkins,* (2 *Rawle,* 282.) *Commonwealth* v. *Strembeck,* (3 *Rawle,* 341.) *M'Coy* v. *Reed,* (5 *Watts,* 302.) *Darrick* v. *Turner,* (8 *Johns. Rep.* 20.) *Power* v. *Van Buren,* (7 *Cowen,* 562.)

Mr. *Patrick* and Mr. *Hepburn,* for the appellees.
It appears from the evidence in the case, that Heckman was the sheriff's deputy. As the party had a right to an issue, and did not ask it, the Court will consider the decree of the Court below conclusive on the facts. The statements in the sheriff's return are relevant

and conclusive.  *Warder* v. *Tainter*, (4 *Watts*, 274.)  *Blythe* v. *Richards*, (10 *Serg. & Rawle*, 266.)  The weight of evidence independently of the sheriff's return, is clearly in favour of the order to stay the execution, having been given.  The sheriff adopted the act of Heckman.  The return is not uncertain, since it plainly amounts to a return of " proceeding stayed by order of the plaintiff's attorney."  There is no case brought before this Court on appeal, on the same facts which were submitted to the Court below, in which this Court has reversed.

Mr. *A. E. Browne*, replied.

. The opinion of the Court was delivered by

ROGERS, J.—In all cases of sale upon execution, where there is a dispute concerning the distribution of the money, the Court from which the execution issues, have power to determine the same, according to law and equity.  Act of 16th June, 1836.  The money in this case was brought into Court, under the authority of that act, and the question is, to whom it rightfully belongs.  It has been repeatedly ruled, that an order given by an execution creditor to the sheriff, to stay all further proceedings on his execution, until further directions, is a waiver of his priority in favour of a second execution received by the sheriff during the continuance of the stay.  *Eberle* v. *Mayer*, (1 *Rawle*, 366.)  This principle bears directly on the point here, which depends entirely on the fact, whether Mentz & Son, by their attorney, gave an order to stay proceedings on their execution.  And of this, as between these parties, there can be no doubt.  To the execution of Mentz & Son, the sheriff made the following return. " To the judges within named, I do certify and return, that the within writ came to my hands on the day endorsed on the inner margin, and that nothing was done in pursuance thereof, by the directions of the plaintiffs' attorney, as I understood from J. K. Heckman, in whose hands the writ was deposited, until the 15th of June last, when a *testatum fi. fa.* issued out of the District Court of the City and County of Philadelphia, at the suit of Kay and Kay, was placed in my hands, with directions to proceed forthwith, whereupon I levied both writs on the personal property of the defendant, and exposed the same to sale; which sale yielded the sum of nine hundred and thirty-three dollars and twenty-six cents; which amount, after payment of costs, is claimed by both execution creditors, and which I have paid into Court, under the authority of the act of assembly."  On the return of the sheriff, which is conclusive evidence of the facts contained in it, it is very clear, that the money was properly adjudged to the younger execution creditor; Mentz & Son having voluntarily waived in favour of that execution all priority arising from the fact, that their execution was first put in the hands of the sheriff.  Although it is not so formal as it might be,

(Mentz *v.* Hamman.)

yet the sheriff has substantially returned, that the first execution was stayed by order of the plaintiffs' attorney; and it is no manner of consequence on whose information he chooses to rely for the truth of his return.   That is a matter which does not concern the second execution creditor: it would not excuse the sheriff in an action for a false return, that he was misled, either by the mistake, or wilful misrepresentation of his deputy.   If that be so, the deputy is liable over to him.   The words, " as I understood from J. K. Heckman," may be rejected as surplusage, and then it stands as a return that the proceedings were stayed by order of the plaintiffs' attorney; and this on the authority of *Eberle* v. *Mayer*, postpones him in favour of the second execution.   The subsequent levy and sale on both executions, cannot change the relative situation of the parties ; as by the order to the sheriff the first execution is irrevocably postponed. The return of the sheriff must be certain, or it is bad ; but there is nothing in which this return is uncertain.   The material fact, that the proceedings on the first execution were stayed by the order of the plaintiffs' attorney, is distinctly stated ; nor is there less certainty in the other parts of the return.   The additional words may be stricken out without altering the sense, and cannot affect its validity. *Utile per inutile non vitiatur.*   The most that can be said, in objection to the return, is, that it is defective in form ; but this may be amended by leave of the Court.   The sheriff is not obliged, unless ruled so to do, to make a return to a writ of *fieri facias;* but when he makes a return to the writ, it is conclusive between other parties, and can be impeached only in an action against the sheriff.   If the return of the sheriff be false, or there be any neglect of duty by the under sheriff or bailiff, the sheriff is alone responsible to the party injured.   As between conflicting execution creditors, it cannot be gainsaid ; the injured party having an adequate remedy against him.   This principle, if it need the aid of authority, was ruled in *Debler* v. *Roberts*, (13 *Serg. & Rawle*, 64,) and *Blythe* v. *Richards*, (10 *Serg. & Rawle*, 266.)   The parol evidence was given to contradict the sheriff's return, and for that purpose was clearly inadmissible, and must be altogether disregarded.   It is a singular feature in this case, that the sheriff and his deputy were examined to the truth of the return ; and this, of itself, shows the wisdom of the rule, as heretofore established.   If they could be examined for, they may be examined against the return ; and in this manner escape from the consequences of official misconduct.   In an action against the sheriff, the truth of the return may be inquired into ; and for that purpose parol evidence will be competent : this cannot be as the case now stands, as the younger execution creditor can rely on the return as conclusive of his right to the money raised by the sale. The act of assembly to which reference has been made, does not dispense with, nor in any manner alter the well established rules of evidence, nor does it in the least change the responsibility of the

(Mentz *v.* Hamman.)

sheriff. It may, indeed, be doubted, whether it makes any alteration in the practice, except in the section which gives an appeal to the Supreme Court. There is certainly nothing in the circumstance that the money awaits the distribution of the Court, which impairs the conclusive force which the law gives to a sheriff's return. Before return made by the sheriff, the Courts have always interposed to prevent injustice, but they cannot alter the effect of a return; although in a proper case they may enlarge the time for making it, or may grant leave to amend it. The Court is always anxious to protect the officer in the discharge of his duty; but at the same time we must be careful not to screen him from the necessary responsibility to suitors. It is difficult to calculate the mischief which may arise, from relaxing those wholesome restrictions on the exercise of executive authority. Nor must we for one moment give countenance to the practice of introducing parol testimony to control the sheriff's return, except in an action against him for official misconduct.

Decree of the Court of Common Pleas affirmed.